IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

KENNETH ROBERT SHAFFER

        Plaintiff,                NO. 3:12-CV-02450

v.                             (JUDGE ROBERT D. MARIANI)

GREATER HAZLETON HEALTH ALLIANCE,
trading as, HAZLETON GENERAL HOSPITAL

        Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S PARTIAL MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiff Kenneth Robert Shaffer has filed this action against his former employer Defendant Greater Hazleton Health Alliance raising causes of action for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §12101 ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAA") and the Pennsylvania Human Relations Act, 43 P. S. §955(a) ("PHRA"); and age discrimination under the Age Discrimination in Employment Act, 29 U. S.C. §621 ("ADEA") and the PHRA.

Defendant has filed a Motion to Dismiss all claims. Defendant's Motion should be denied with prejudice because Defendant ignores factual allegations in the Complaint, misrepresents Plaintiff's Complaint, and

erroneously claims Plaintiff has failed to state a legal and factual basis for the claims.

## II.    FACTUAL BACKGROUND

Plaintiff Kenneth Robert Shaffer ("Shaffer") is 81 years of age. ¶1.[1] Plaintiff commenced employment with Defendant Greater Hazleton Health Alliance, trading as, Hazleton General Hospital ("GHHA"), in December 1993 and worked six years as a Security Officer. Plaintiff was re-hired by Defendant during the period 2001-2003; and was rehired for a second time in 2005. ¶10.  From 2005 until January 15, 2010, Plaintiff was continuously employed by Defendant until his employment was unlawfully constructively terminated. ¶11.

As of March 2009, Plaintiff was employed as a Security Officer, working 22.5 hours per week and paid $12.10 per hour. Plaintiff worked a regular shift three days per week, which started time at 2 p.m. and ended at 10 p.m. ¶13. On March 19, 2009, Plaintiff became ill, sustained an aortic aneurysm and required open heart surgery. ¶14. Defendant had information concerning Plaintiff's March 19, 2009 medical condition because it required a physical examination from Dr. John Amenter, hospital physician, who

---

[1] All facts cited herein are alleged in Plaintiff's Complaint and referred to by paragraph number (i.e. "¶X").

requested a release from Plaintiff's doctors before Plaintiff would be released back to work. ¶15. As of June 10, 2009, Plaintiff's family physician and cardiologist released him to return to work without any restrictions. ¶16.

Upon return to work on June 15, 2009, Plaintiff was initially placed back on his previous schedule, initially working 22.5 hours per week as a Security Officer. ¶17. On October 3, 2009, Plaintiff became sick at work with flu like symptoms.  As a consequence, Plaintiff was admitted to Defendant's hospital for two days. ¶18. After recovering from the virus Plaintiff was released to return to work. ¶19. Defendant then advised Plaintiff that before being placed back on to its work schedule, he would need to be examined by Dr. John Amentler, hospital physician. ¶20. Dr. Amentler advised Plaintiff he would need medical clearance from his family physician and cardiologist before he would release Plaintiff to return to work. ¶21. Thereafter, Plaintiff requested and received clearances from George D. Yurko, DO, Plaintiff's primary care physician and Thomas J. Ciotola, MD, Plaintiff's cardiologist, each of whom confirmed that Plaintiff could return to work at full capacity without any limitations. ¶22. Defendant did not permit Plaintiff back to work until November 22, 2009, at which time Plaintiff was demoted from his former Security Officer job, where he had worked 22.5 hours per week, to a per diem Courier position, working

3

only as needed. ¶23. Availability of work hours for Plaintiff as a Courier was far different than in his employment as a Security Officer; much fewer work hours were available as a Courier. ¶24. During the period November 22, 2009 to January 4, 2010, Plaintiff Shaffer was assigned weekly work hours ranging from 5.5 hours to 16.5 hours per week, rather than the steady 22.5 hours per week he received as a Security Officer. ¶25.

On January 4, 2010, Plaintiff forwarded a letter to his supervisor, Dan Bennett, requesting that he be returned to his Security Officer position. ¶26. On January 6, 2010, Elizabeth A. Perong, Defendant's Vice President of Human Resources, advised Plaintiff that his January 4, 2010 letter was accepted as a "resignation." ¶27. After Plaintiff submitted his letter requesting to return to his position as Security Officer, Defendant unilaterally decided to characterize the letter as a "resignation." The letter was not a "resignation"; it was a request to return to his position as at the same hours/days per week. ¶28.

Following its receipt of Plaintiff's January 4, 2010, letter Defendant failed to engage in any interactive process with Plaintiff and summarily concluded Plaintiff had "resigned." ¶29. Under the circumstances Plaintiff was constructively discharged from employment by Defendant. ¶30. Following October 7, 2010, Plaintiff Shaffer's work hours as a Security

4

Officer were assigned to substantially younger employees who had not taken leaves of absence from work for serious medical conditions, none of whom Defendant regarded as disabled. ¶31.

## III.   LEGAL STANDARD

Defendant has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). A court's inquiry is directed towards whether a plaintiff's allegations constitute a claim under Fed.R.Civ.P. 8(a). A district court may consider only the facts alleged in the complaint and its attachments on a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). Though the "plain statement" rule of 8(a) is construed quite liberally, the court need not credit a plaintiff's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). A court should not look to whether plaintiff will "ultimately prevail," it should only consider whether plaintiff should be allowed to offer evidence in support of his claims. *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1420 (3d Cir.1997).

Under the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6), the complaint must plead sufficient factual allegations that, taken as a whole, state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d. 868 (2009), citing, *Twombly*, 550 U.S. at 556). While "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to establish plausible allegations to survive the motion. *Id.* at 1949, a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), quoting, *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted therein. *Fowler*, 578 F.3d at 210. Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff

6

has a "plausible claim for relief." *Id*. at 211, quoting, *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950, 173 L.Ed.2d at 884). Ultimately, the two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." *Iqbal*, 556 U.S. at 680, 129 S.Ct. at 1950-1951, 173 L.Ed.2d at 884-885. A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941.

## IV. PLAINTIFF HAS VIABLE DISABILITY AND AGE <u>DISCRIMINATION CLAIMS</u>

### A. DISABILITY DISCRIMINATION

The ADA prohibits covered employers from discriminating against disabled individuals. 42 U.S.C. § 12112(a) (2006). In Count I of the Complaint Plaintiff alleges that Defendant has violated the ADA because Defendant viewed Plaintiff as having a physical impairment, which prevents and/or restricts him from performing tasks and major life activities ¶37; Defendant viewed Plaintiff as having a record of impairment during the course of his employment; and regarded him as having an impairment ¶38;

at times, Plaintiff's impairments may be viewed as affecting Plaintiff's ability to function and substantially limit major life activities ¶39;  Plaintiff suffered an adverse employment decision in the form of the constructive termination of his employment as a result of Defendant's discrimination based upon the perception that he has a disability ¶40; and in constructively terminating Plaintiff's employment, Defendant treated Plaintiff differently than other similarly situated individuals who are, or were not disabled, or whom Defendant did not regard as disabled ¶41.[2]

To state a claim of disability discrimination under the ADA, Plaintiff must allege that he: (1) has a "disability" within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job, and (3) has suffered an adverse employment decision because of his disability. *Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004).*[3]

---

[2] Count III mirrors Count I and alleges disability discrimination under the PHRA.

[3] The same analysis applies to a PHRA disability claim." *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 306 (3d Cir. 1999).

1.     **Plaintiff has a "disability" within the meaning of the ADA**

Under the ADA, the term "disability" means, with respect to an

individual--

> (A) a physical or mental impairment that substantially limits
> one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such impairment.

*42 U.S.C. § 12102(2).*

Plaintiff's Complaint satisfies all three subsections of the ADA's

definition of disability.

> a.     **Plaintiff Had a Physical Impairment That
>         Substantially Limited One Or More Major Life
>         Activities**

The ADA Amendments Act of 2008 ("ADAAA") became effective

January 1, 2009. Pub. L. No. 110-325, 122 Stat 3553. The ADAAA sought

to reinstate "a broad scope of protection . . . available under the ADA." *Id.* at

3554, citing, *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139,

144 L. Ed. 2d 450 (1999) and *Toyota Motor Mfg., Kentucky Inc. v. Williams*,

534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). The primary way in

which Congress chose to broaden the scope of ADA coverage was to expand

the law's definition of the term disability. Congress' stated purpose in

expanding the definition of disability was to "convey that the question of

whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* This is because "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations." *Id.*

While the ADAAA retains the three prong definition of disability, the Act expanded the meaning of terms under the actual disability prong, 42 U.S.C. § 12102(1), the ADA now states that "[t]he definition of 'disability' [under the Act] shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms [of the Act]." 42 U.S.C. § 12102(4)(A). The definition of "major life activities" under the Act's actual disability prong was also expanded to include the operation of "major bodily functions." 42 U.S.C. § 12102(2)(B). The Act now includes a sample list of major bodily functions that constitute a major life activity which includes the circulatory system. *Id.*

Under the ADAAA, "the term 'substantially limits' is to be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv)."An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. 29

C.F.R. § 1630.2(j)(ii)."[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102. As long as an impairment substantially limits one major life activity, it need not limit other major life activities in order to be considered a disability. 42 U.S.C. §12102(4)(C).

At the early pleading stage, the Third Circuit has instructed that a plaintiff is not required, to go into particulars about the life activity affected by his alleged disability or detail the nature of substantial limitations. *Fowler,* 578 F.3d at 213. Rather, the District Court should focus on the appropriate threshold question -- namely, whether the plaintiff pleaded is an individual with a disability. *Id.* Under *Fowler*, at this juncture, it is sufficient that Plaintiff identify an impairment, of which the employer was aware, and alleges that such impairment constitutes a disability under the statute. *Id. at 213. Also See*, *Slade v. Hershey Co.,* 2009 U.S. Dist. LEXIS 114404, 2009 WL 4794067, *4 (M.D.Pa., Dec. 8, 2009).

Here, Plaintiff has plead that he became ill, sustained an aortic aneurysm and required open heart surgery ¶14; and he was out of work for a substantial period of time under his physician's orders ¶15-16. Thus,

11

Plaintiff has met the requisite standard by pleading that he has a major life activity problem relating to the circulatory system (heart disease) and that at one time his ability to work was affected by the condition.

### b.   Plaintiff Had a Record of Impairment

An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities. 29 C.F.R. § 1630.2(k)(1). Here, the facts alleged in the Complaint establish that Plaintiff took a leave of absence from work and upon his return was denied a return to his previous position, Security Officer, based upon a perception that his record of a heart condition and heart surgery prohibited him from functioning as a Security Officer. As such, Plaintiff had a record of a disability because he had a history of heart problems and had been misclassified as having, a physical impairment that substantially limits one or more major life activity (i.e. working).

### c.   Plaintiff Was Regarded as Having Impairment;

A person is "regarded as" having an impairment if he:

   (1) Has a physical or mental impairment that does not substantially limit major life activities  but is treated by the covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002).

*In Sutton,* the United States Supreme Court found that two ways in which individuals may fall within the "'regarded as" prong:

(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual -- it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton, 527 U.S. at 489*

Here, Plaintiff had a long history of being employed by Defendant as a Security Guard, Plaintiff became ill, sustained an aortic aneurysm and required open heart surgery. Plaintiff's physicians released him to return to work without any restrictions and despite receiving clearances from his physicians to return to work at full capacity without any limitations, Defendant did not permit Plaintiff to return to work as a Security Officer. These facts establish misperceptions by Defendant; that Defendant believed Plaintiff had a physical impairment that prohibited him from working as a

Security Officer and a mistaken belief that the impairment substantially limited Plaintiff from functioning as a Security Officer.

Thus, the Complaint establishes that Plaintiff has a "disability" within the meaning of the ADA; Plaintiff was qualified to perform the essential functions of his job; and Plaintiff suffered an adverse employment decision; no long being employed as a Security Officer based upon Defendant's misperception that he could not perform the job because of a disability; and Plaintiff's Security Officer duties were taken over by non-disabled employees whom did Defendant did not view as disabled. Consequently, Plaintiff's Complaint meets all requisite elements for proving a disability discrimination case.

### B.   AGE DISCRIMINATION

The ADEA makes it unlawful "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 621(a)(1). The purpose of this statute is to "prohibit age discrimination in employment" and "to promote employment of older persons based on their ability rather than age." 29 U.S.C. § 621(b). In Count II of the Complaint Plaintiff alleges that Defendant has discriminated against Plaintiff based upon his age in violation

of the ADEA in that Defendant has treated substantially younger individuals,
who are either less qualified, or no more qualified than Plaintiff, differently
and employed the substantially younger individuals as Security Officers
rather than Plaintiff ¶43; Defendant's refusal to continue to employ Plaintiff
as a Security Officer constitutes unlawful age discrimination in violation of
the ADEA, which forbids age discrimination ¶44; and Plaintiff's assigned
work hours as a Security Officer were assumed by substantiality younger
employees who were less qualified and/or no more qualified than Plaintiff
¶45.[4] In support of these allegations Plaintiff has plead that he is 81 years of
age. ¶1; he has a long record of work for Defendant as a Security Officer;
¶10-¶13; after recovering from a virus Plaintiff was released to return to
work as a Security Officer as of October 30, 2009 ¶19-¶22; Defendant
refused to return Plaintiff to work as a Security Officer ¶23; and following
October 7, 2010, Plaintiff's work hours as a Security Officer were assigned
to substantially  younger employees. ¶31.

---

4 Count IV mirrors Count II and alleges age discrimination under the PHRA.
The same legal standard applies to age discrimination claims under  the
PHRA. *See Glanzman v. Metropolitan Management Corp.,  391 F.3d 506,
509 n. 2 (3rd Cir. 2004)*.

To plead a claim of discriminatory discharge under the ADEA, a plaintiff must allege that: (1) he was over 40 years of age; (2) the defendant took an adverse employment action against him; (3) he was qualified for the position which he held; and (4) he was replaced by a person sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009)*.  A plaintiff can also satisfy the fourth element by showing that similarly situated non-protected employees were treated more favorably. *Wilson v. N. Westmoreland Career and Tech. Ctr.,* 2011 U.S. Dist. LEXIS 19362, 2011 WL 772881, at *9 (W.D. Pa. Feb. 28, 2011)*,* quoting, C*layton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002).

The Third Circuit has also recognized that age discrimination may be inferred from the fact "that a plaintiff's replacement was sufficiently younger to permit a reasonable inference of age discrimination."*Ullrich v. United States Sec'y of Veterans Affairs*, 457 F. App'x 132, 138 n. 3 (3d Cir. 2012), citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006).

Plaintiff's Complaint meets all of the requisite elements of an age discrimination case by alleging (1) he was over 40 years of age- Plaintiff is age 81; (2) the defendant took an adverse employment action against him- Defendant refused to continue to employ Defendant as a Security Officer

16

and later deemed a letter where Plaintiff sought to be reinstated as a Security Officer as a resignation; (3) he was qualified for the position which he held- Plaintiff had a long record of working for Defendant as a Security Officer and had been medically cleared to return to work as a Security Officer; and (4) he was replaced by a sufficiently younger to support an inference of discriminatory animus- Plaintiff had plead that his previous work hours as a Security Officer were assumed by substantially younger employees.

Defendant fails to address the facts plead by Plaintiff and instead summarily claims that "Plaintiff's Complaint allege no facts capable of supporting a reasonable and plausible inference that GHHA refused to employee Plaintiff as a Security Officer because of his age. To the contrary, Plaintiff has properly plead facts which support an age discrimination case under the Third Circuit's standard in *Smith, id.*

IV.   **CONCLUSION**

For the reasons set forth above, Plaintiff Kenneth Robert Shaffer

respectfully requests that this Court deny Defendant Greater Hazleton

Health Alliance's Motion to Dismiss Plaintiff's Complaint with prejudice.


/S/ Andrew S. Abramson, Esq.
_____
Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422

Attorney for Plaintiff Kenneth
Robert Shaffer

Dated: January 28, 2013