# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH ROBERT SHAFFER, : | |
| : | |
| Plaintiff : | |
| v. : | 3:12-CV-02450 |
| : | (JUDGE MARIANI) |
| GREATER HAZLETON HEALTH : | |
| ALLIANCE, trading as, HAZLETON : | |
| GENERAL HOSPITAL : | |
| : | |
| Defendant : | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Kenneth Robert Shaffer filed a four-count Complaint against Defendant Greater Hazleton Health Alliance, trading as Hazleton General Hospital, for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS. STAT. § 951, *et seq.* (Doc. 1). Before the Court is Defendant's Motion to Dismiss (Doc. 6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Court will deny Defendant's motion.

This Court has jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331 and 1367. Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b).

## II. Factual Allegations

Plaintiff, who is eighty-one years old, began working for Defendant as a Security Officer.[1] (Compl., Doc. 1, at ¶¶ 7, 10). On March 19, 2009, Plaintiff sustained an aortic aneurysm which necessitated open heart surgery. (*Id.* at ¶ 14). Before returning to work, one of Defendant's doctors, Dr. John Amenter, physically examined Plaintiff and "requested" him to attain a release from his family physician and cardiologist. (*Id.* at ¶ 15). Plaintiff's "family physician and cardiologist" cleared him to work without any restrictions. (*Id.* at ¶ 16). On June 15, 2009, Plaintiff returned to his position as Security Officer. (*Id.* at ¶ 17).

On October 3, 2009, Plaintiff became ill, displaying flu-like symptoms, and was subsequently hospitalized for two days in Defendant's hospital. (*Id.* at ¶ 18). After recuperating, Defendant notified Plaintiff that he would need to consult Dr. Amenter before returning to work. (*Id.* at ¶¶ 19-20). Dr. Amenter required Plaintiff to again attain clearances from his family physician and cardiologist. (*Id.* at ¶ 21). Despite the fact that Plaintiff's doctors "confirmed that Plaintiff could return to work at full capacity without any limitations," Defendant "did not permit [Plaintiff] back to work until November 22, 2009, at which time Plaintiff was demoted from his former Security Officer, job [*sic*] where he had worked 22.5 hours per week, to a per diem Courier position, working only as needed." (*Id.* at ¶¶ 22-23). Following his second hospital stay, Plaintiff's "work hours as a Security Officer were assigned to substantially younger employees who had not taken leaves of absence

---

[1] Defendant employed Plaintiff for various intervals between December 1993 and 2003. (Compl., Doc. 1, at ¶ 10). In 2005, Defendant rehired Plaintiff as a Security Officer. (*Id.*)

2

from work for serious medical conditions, none of whom [Defendant] regarded as disabled." (*Id.* at ¶ 31).

Because his weekly work hours as a Courier (between 5.5 hours and 16.5 hours per week) were less than what they had been as a Security Officer (22.5 hours), Plaintiff wrote a letter to his supervisor requesting to be reinstated as a Security Officer. (*Id.* at ¶¶ 25-26). Two days later, Defendant advised Plaintiff that his letter was accepted as his "resignation." (*Id.* at ¶ 27). Plaintiff alleges that (1) Defendant "unilaterally decided to characterize the letter as a 'resignation,'" (2) "[t]he letter was not a 'resignation,'" and (3) Defendant's actions constituted constructive discharge and "had discriminatory motives . . . based upon [Plaintiff]'s age and perceived disability." (*Id.* at ¶¶ 28-30, 33).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* at ¶ 4). He received his right-to-sue letters from the EEOC on October 3, 2012 and from the PHRC on February 23, 2012. (*Id.* at ¶¶ 5-6).

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Where "a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) *cert. denied*, —— U.S. ——, 131 S.Ct. 1798, 179 L. Ed. 2d 655 (2011) (internal citations and quotation marks omitted).

## IV. Analysis

### A. Disability Discrimination[2]

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state a claim for disability discrimination under the ADA, a plaintiff must allege that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination . . . ."

---

[2] Because "analysis of an ADA claim applies equally to a PHRA claim," the Court will, therefore, consider both claims simultaneously and will refer to the two separate counts of discrimination as the "disability discrimination claims." *Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp. 2d 621, 630 n.4 (M.D. Pa. 2006) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

5

*Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186 (3d Cir. 2009) (quotation marks omitted). The ADA defines "disability" as: (A) "a physical or mental impairment that substantially limits one or more of the major life activities of such [an] individual"; (B) "a record of such an impairment"; or (C) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Here, Plaintiff does not allege that he was disabled but that Defendant regarded him as being disabled. (Compl., Doc. 1, at ¶ 38). An employee is "regarded as" being disabled if the employee:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the [employer] as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a[n] [employer] as having a substantially limiting impairment.

*Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999) (citing 29 C.F.R. § 1630.2(1).

Moreover, "to be covered under the 'regarded as' prong of the ADA the employer must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002) (internal quotation marks and brackets omitted). As a result, this analysis focuses not on the employee and his actual

6

abilities and impairments, "but rather on the reactions and perceptions of the persons interacting or working with him." *Kelly v. Drexel Univ.*, 94 F.3d 102, 108-09 (3d Cir. 1996).

For the purposes of its Motion to Dismiss, Defendant does not contest that "Plaintiff has sufficiently pleaded that he was disabled, otherwise qualified, and suffered adverse employment actions when he was demoted and then ultimately determined to have resigned . . . ." (Def.'s Reply Mem., Doc. 12, at 2 n.1, 4). Instead, Defendant disputes only whether Plaintiff pleaded enough facts to satisfy the third element (*id.* at 4), *i.e.*, whether Plaintiff's adverse employment was "a result of" his alleged disability. *See Hohider*, 574 F.3d at 186.[3]

Although Plaintiff does not directly rebut Defendant's argument regarding the third element, Plaintiff asserts:

> Plaintiff had a long history of being employed by Defendant as a Security Guard, Plaintiff became ill, sustained an aortic aneurysm and required open heart surgery. Plaintiff's physicians released him to return to work without any restrictions and despite receiving clearances from his physicians to return to work at full capacity without any limitations, Defendant did not permit Plaintiff to return to work as a Security Officer. These facts establish misperceptions by Defendant; that Defendant believed Plaintiff had a physical impairment that prohibited him from working as a Security Officer and a

---

[3] To this end, Defendant further asserts that "Plaintiff has . . . to show how he and other non-disabled employees were similarly situated but treated differently" because of his protected class. (Def.'s Reply Mem., Doc. 12, at 4). In support of this argument, Defendant cites *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). (Def.'s Reply Mem., Doc. 12, at 4). However, the Third Circuit observed in *Sarullo* that it had "explicitly rejected [such] a requirement." *Sarullo*, 352 F.3d at 797 n.7 (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)). Instead, employees are only required to muster enough "'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" *Pivirotto*, 191 F.3d at 355 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). Under the ADA, "favorable treatment outside the protected class is an 'alternative' element to a *prima facie* case . . . [which] can be present but by no means must be present." *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939 (3d Cir. 1997).

> mistaken belief that the impairment substantially limited Plaintiff from functioning as a Security Officer.

(Pl.'s Mem. in Opp., Doc. 10-1, at 13-14; Compl., Doc. 1, at ¶¶ 10-14, 22-23).

Plaintiff further avers that just over six months after his return to work following open heart surgery, Plaintiff was demoted from security officer to Courier. (Compl., Doc. 1, at ¶ 23). Less than two months later, Plaintiff alleges, he was constructively discharged. (*Id.* at ¶¶ 17, 28-30). Although, on its own, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action," there is no dispute that Defendant was aware of Plaintiff's medical maladies. *Kelly*, 94 F.3d at 109. One of Defendant's doctors examined Plaintiff prior to his return to work following both his heart surgery and his flu-like virus. (*Id.* at ¶¶ 15, 20; Def.'s Mem. in Supp., Doc. 7, at 1 n.1, 2).

While Plaintiff does not raise this argument in his opposition memorandum, several courts have found that the "temporal proximity" between an employee's disclosure of an impairment and an adverse employment action may be sufficient to support an inference that the employer regarded the employee as disabled and that that perception caused the adverse employment action. *See Warshaw v. Concentra Health Servs.*, 719 F. Supp. 2d 484, 496 (E.D. Pa. 2010) ("As a general matter, a fact-finder could reasonably conclude that adverse actions suffered by an employee shortly after an employer learns of the disability are, in fact, based on the employer's belief that the employee is limited in a major life

8

activity."); *Kiniropoulos v. Northampton Cnty. Child Welfare Serv.*, Civil Action No. 11-6593, 2013 WL 140109, at *5 (E.D. Pa. Jan. 11, 2013) (finding temporal proximity, between an employee's disclosure to his supervisor that he sustained significant injury to his leg and an adverse employment action approximately five months later, was sufficient to support inference that the employer's action was "because of" a perceived disability); *Weaver v. Cnty of McKean*, C.A. No. 11-254, 2012 WL 1564661, at *4 (W.D. Pa. Apr. 9, 2012) (finding a *prima facie* case of "regard as" discrimination based on the immediacy of an employee's placement on "administrative leave" and eventual termination after her employer discovered "her psychological conditions and medication regimen"); *Bullock v. Balis & Co.*, Inc., No. Civ. A. 99-748, 2000 WL 1858719, at *5 (E.D. Pa. Dec. 19, 2000) (finding a temporal proximity that raised an inference of discriminatory motive); *Stewart v. Bally Total Fitness*, No. Civ. A. 99–3555, 2000 WL 1006936, at *5 (E.D. Pa. July 20, 2000) (same).

Here, the temporal proximity between Defendant's discovery of Plaintiff's medical issues and Defendant's decision to demote and allegedly constructively discharge Plaintiff raises an inference that these "employment decision[s] [were] based on an illegal discriminatory criterion" based on. *See O'Connor*, 517 U.S. at 312; *Warshaw*, 719 F. Supp. 2d at 496. As a result, Plaintiff has adequately stated a claim of disability discrimination under the ADA. Therefore, the Court must deny Defendant's motion to dismiss Plaintiff's disability claims.

## V. Age Discrimination[4]

Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To state a claim for age discrimination under the ADEA, a plaintiff must allege that (1) he is over forty, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination." *Thomas v. Lehighton Emergency Med. Assoc., P.C.*, 3:12-CV-0655, 2012 WL 3536985, at *3 (M.D. Pa. Aug. 15, 2012) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 248 (3d Cir. 2006).

Here, Defendant contests the fourth element, asserting that Plaintiff fails to "sufficiently establish an inference of age discrimination . . . ." (Def.'s Reply Br., Doc. 12, at 6-7). According to Defendant, the Complaint alleges that Plaintiff is currently eighty-one years old but fails to specify the ages of the employees who replaced Plaintiff as Security Officer. (Compl., Doc. 1, at ¶¶ 7, 31). Nevertheless, the Court will not dismiss Plaintiff's age discrimination claims on this basis. Given that Plaintiff was eighty-one years old at the time he filed the Complaint, whoever replaced him would likely be substantially younger than him. *See also Thomas v. Lehighton Emergency Med. Assoc., P.C.*, 3:12-CV-0655,

---

[4] Because it is "proper to address ADEA and PHRA age discrimination claims collectively," the Court will consider both claims coterminously and will refer to the two separate counts of discrimination under the ADEA and the PHRA as the "age discrimination claims." *Thomas v. Pocono Mountain Sch. Dist.*, 3:10-CV-1946, 2012 WL 3542413, at *3 n.1 (M.D. Pa. Aug. 14, 2012) (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n. 3 (3d Cir. 2010).

2012 WL 3536985, at *3 (M.D. Pa. Aug. 15, 2012). Requiring Plaintiff to re-plead his age discrimination claims would elevate form over substance. Therefore, while this allegation is barely sufficient to survive a motion to dismiss, the issue may be properly revisited after discovery. See *Sadowski v. Nanticoke*, No. 3:10-CV-242, 2013 WL 1176254, at *5-6 (M.D. Pa. Mar. 20, 2013).

## VI. Conclusion

For the foregoing reasons, the Court will deny Defendants' motion to dismiss. (Doc. 6). A separate Order follows.

Robert D. Mariani
United States District Judge